UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JO-DEE L. ORTEGO                           CIVIL ACTION

VERSUS                                     NO: 13-836

DEPARTMENT OF TRANSPORTATION               SECTION: J
AND DEVELOPMENT (STATE OF
LOUISIANA) AND CONNIE STANDIGE

## ORDER AND REASONS

Before the Court is Defendants Department of Transportation and Development (State of Louisiana) and Connie Standige's ("DOTD" and "Standige") *Motion for Summary Judgment* **(Rec. Doc. 12)**, Plaintiff Jo-Dee Ortego's ("Ortego") *Opposition* to that motion, **(Rec. Doc. 20)**, and Defendants' *Reply* **(Rec. Doc. 24)**. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that Defendants' *Motion for Summary Judgment* should be **GRANTED.**

## PROCEDURAL AND FACTUAL BACKGROUND

Ortego is a former employee of DOTD, where she worked as a stockroom clerk beginning in July 2005. Ortego's highest ranking supervisor was Sheila Tate ("Tate"), and her other supervisors included Rhonda Rylatt ("Rylatt"), Sherrie McKinney ("McKinney"), and Karen Dunnington ("Dunnington"). Connie Standige ("Standige") was the District Administrator of the district in question and was

1

Tate's direct supervisor. In July 2006, Ortego was diagnosed with epilepsy and began taking leave from work due to medical appointments. On October 14, 2008, Ortego submitted a written request to Tate through an official DOTD schedule change request form, asking for a work schedule change. Specifically, Ortego requested to switch to four works days per week at ten (10) hours per day, instead of five work days per week at eight (8) hours per day. Ortego claims that she submitted this request upon the suggestion of McKinney, Rylatt, and Dunnington, who thought that a work schedule change would enable Ortego to attend her medical appointments without taking leave from work. In her deposition, Ortego admitted that this schedule change request form was a form that any employee could use to request a change in schedule and that her form did not reference the Americans with Disabilities Act (ADA) or mention her epileptic condition. (Rec. Doc. 20-1, p. 27-34). Tate denied Ortego's request, and Ortego claims that Tate stated that she was not willing to accommodate "FMLA people," which Ortego took to mean that Tate was not willing to accommodate employees with disabilities. On October 23, 2008, Tate announced an unpopular work hours change that affected all employees. Ortego claims that Tate encouraged other DOTD employees to blame Ortego for this change.

Ortego next made a verbal request for a work schedule change directly to Tate on October 29, 2008. Ortego claims that in their

conversation, the two discussed Ortego's epilepsy, but Tate still denied the request. After this, Ortego consulted with Candy Cardwell ("Cardwell"), who worked in Human Resources, and the two worked together to draft a written ADA accommodation request, which Ortego submitted to Tate on November 3, 2008. That request was granted on November 7, 2008, and Ortego's work schedule was modified to accommodate her epilepsy.

Ortego alleges that after this, Tate increased her workload and gave her extra duties with impossible deadlines. Ortego also claims that Tate penalized Ortego by instigating an investigation of Ortego's misuse of her work computer. Ortego admits that she visited websites such as Facebook and Yahoo but maintains that other workers also visited these websites and were not singled out for investigation. According to Ortego, Tate told co-workers that she hated Ortego and tried to "corner" Ortego at work for the purpose of doing her physical harm. On March 2, 2009, Ortego filed a charge of discrimination with the Louisiana Commission on Human Rights, alleging that Tate had created a hostile work environment for her. Ortego filed an EEOC charge on the same date. On or about May 7, 2009, Ortego filed a harassment complaint with DOTD Human Resources, alleging that "the sight of [Tate] is harassment." Ortego claimed that Tate was inflexible and had "harassed" her and other DOTD employees when they took breaks at work. DOTD investigated this claim and found insufficient evidence to show

3

that Tate was harassing Ortego or other employees. Ortego and several other employees filed another harassment complaint against Tate with DOTD Human Resources on May 17, 2010.[1] Additionally, Ortego made allegations that Tate stalked her on two separate occasions while both women were driving in their cars. Ortego complained to DOTD and also filed police reports regarding these incidents. DOTD performed investigations of both stalking complaints but found that Ortego's allegations were unsubstantiated. (Rec. Doc. 20-1, p. 149-154).

Tate filed suit against Ortego on May 23, 2011, alleging that Ortego had filed knowingly baseless internal harassment complaints against her with DOTD, as well as a knowingly baseless EEOC complaint where Ortego claimed that no accommodation had been provided for her when, in fact, the requested accommodation was provided. Tate also alleged that Ortego falsely accused her of criminal stalking activity by filing internal complaints with DOTD as well as police reports. (Rec. Doc. 20-1, p. 63-65, 73). Additionally, Tate claimed that Ortego spread baseless rumors about her around the office, including rumors that Tate was a lesbian.

On September 9, 2011, Standige sent Ortego a pre-termination letter, stating that Ortego was recommended for terminated based on her violation of DOTD's Policy and Procedure Manual, Number 29,

---

[1] Ortego has provided the Court with the cover sheet of this complaint, but not with any of the attached paperwork. (Rec. Doc. 22). It is therefore impossible for the Court to determine what types of allegations Ortego and her co-workers made against Tate in their complaint of May 17, 2010.

regarding employee conduct. (Rec. Doc. 20-1, p. 149-154). Standige stated that Ortego violated the policy by engaging in insubordination and conduct unbecoming of an employee, and by treating her co-workers with disrespect and lack of dignity. Specifically, Standige mentioned that Ortego had made a false harassment complaint against Tate on May 7, 2009, that Ortego had misused DOTD computers and then falsely accused Tate of increasing her work load as punishment, and that Ortego made multiple, false stalking accusations against Tate. Standige also mentioned that Ortego spread rumors around the workplace about Tate's alleged stalking despite Ortego's knowledge that a confidential investigation was being made into those allegations. In addition, Standige stated that Ortego violated the policy by failing to cooperate with DOTD's investigation of the stalking accusations when she refused to provide DOTD with necessary police reports. Standige stated that these actions were inappropriate, unprofessional, and disruptive to the working environment and that she recommended that Ortego's employment be terminated. On February 20, 2012, Ortego was officially terminated. (Rec. Doc. 20-1, p. 159).

Ortego filed suit on September 5, 2012 in the 21st Judicial District Court for the Parish of Tangipahoa, and Defendants filed their notice of removal to this Court on April 15, 2013. Ortego alleges violations of the ADA, including: (1) failure to provide

her with a reasonable accommodation, (2) retaliation, and (3) harassment. Ortego also alleges parallel violations of the Louisiana Employment Discrimination Law ("LEDL"). In addition, Ortego brings a § 1983 claim against Standige, alleging that Standige retaliated against her for exercising her right to free speech under the First Amendment. Defendants filed the instant *Motion for Summary Judgment* **(Rec. Doc. 12)** on January 14, 2014.

## PARTIES' ARGUMENTS

### A. ADA Claim - Failure to Accommodate

DOTD argues that it provided Ortego with a reasonable accommodation without undue delay. According to DOTD, Ortego's first two requests for accommodation, made on October 14,2 008 and October 29, 2008, were not made through DOTD's established procedure for making ADA-related requests, but when Ortego made a formal ADA request on November 3, 2008, her request was promptly granted on November 7, 2008. DOTD also contends that even if the first two requests are considered ADA requests, the grant of those requests on November 7, 2008 was sufficiently prompt. Ortego claims that DOTD violated the ADA when Tate refused to grant her first two requests for accommodation because there is no requirement that ADA accommodation requests be made by formal application and because Tate was aware that Ortego's requests were somehow related to a medical condition. DOTD argues that Ortego has failed to bring evidence that Tate was aware that Ortego's first two requests were

ADA-related requests, as opposed to normal requests for a work schedule change.

Ortego also maintains that Tate failed to engage in the interactive process mandated by the ADA by refusing to engage in discussions with Ortego. DOTD argues that it engaged in the interactive process when Cardwell and Tate discussed the appropriateness of Ortego's requested accommodation and then granted her request.

### B. ADA Claim - Retaliation

Ortego contends that DOTD terminated her employment in retaliation for her protected activities, including her request for a reasonable accommodation and her filing of an EEOC charge. DOTD argues that Ortego has failed to establish a prima facie case because she has failed to show that there was a causal connection between her alleged protected activity and the termination of her employment. DOTD also contends that even if Ortego can make out a prima facie case, DOTD had legitimate, non-retaliatory reasons for terminating Ortego's employment, and that Ortego has failed to bring evidence that these reasons are a mere pretext for discrimination. Ortego also claims that she was retaliated against when Tate filed a lawsuit against her and when Tate harassed her both inside and outside of work. DOTD maintains that because Tate is not a party to this suit, a lawsuit that Tate filed against Ortego is irrelevant.

### C. ADA Claim - Harassment

DOTD maintains that any harassment that Ortego allegedly suffered was not sufficiently severe to create a hostile work environment and that even if it was, DOTD took prompt remedial action and thus is not liable. Ortego argues that she was subjected to harassment when DOTD employees were angry at her and ostracized her because of Tate's unpopular work schedule policy change, particularly when her co-worker, Duvic, refused to speak to her.

### D. LEDL Claims

All parties agree that the framework for analyzing LEDL claims is identical to the framework for analyzing ADA claims.

### E. § 1983 Claim - Free Speech Retaliation

Ortego claims that Standige terminated her employment in retaliation for Ortego's engaging in protected speech when she reporting the alleged stalking incidents to the police. DOTD argues that Ortego was terminated for violating DOTD's Policy and Procedures Manual, Number 29, and that Standige would have terminated Ortego's employment even in the absence of any protected speech.

### LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp.*

8

*v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.2d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). The Court will examine the evidence in the light most favorable to the nonmoving party. *Naquin v. Fluor Daniel Servs. Corp.*, 935 F. Supp. 847, 848 (E.D. La. 1996) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). While all reasonable inferences are drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.2d at 1075. A Court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may

not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### A. ADA Claim - Failure to Accommodate

The Americans with Disabilities Act ("ADA") dictates as follows:

> The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." ... Discrimination includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such

10

covered entity can demonstrate that the accommodation would impose an undue hardship." ... Thus, a plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a "qualified individual with a disability"; (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations.

*Feist v. Louisiana Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 453 (5th Cir. 2013) (internal citations omitted).[2]

## 1. Qualified Individual with a Disability

An employee is deemed disabled for purposes of the ADA if employee has an impairment that "substantially limits one or more major life activities," if the employee has "a record of such an impairment," or if the employee is "regarded as having such an impairment." 42 U.S.C.A. § 12102(1) (West 2008). Ortego claims that her epilepsy substantially limited her neurological system and therefore limited at least one of her major bodily functions. (Rec. Doc. 1-2, p. 4). Ortego further claims that DOTD regarded

---

[2] A covered employer is any employer that is "engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year ... ." 42 U.S.C.A. § 12111(5)(A) (West 2008). DOTD never argues that it is not a covered employer under the ADA, and so the Court finds that DOTD is a covered employer.

her as having a disability. (Rec. Doc. 1-2, p. 4). In its briefs, DOTD does not appear to argue that Ortego is not a qualified individual with a disability; DOTD never challenges Ortego's claim that her epilepsy affected a major life activity. Therefore, the Court finds that Ortego is a qualified individual with a disability, and the first element is therefore satisfied.

### 2. Disability and Limitations Known by Employer

When a disability is not open, obvious, and apparent to the employer, an employee who seeks an accommodation is responsible for informing her employer of her disability and must specifically identify the disability involved, explain the resulting limitations, and suggest a reasonable accommodation. *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). The employee may use plain English and need not use the phrase "reasonable accommodation" or specifically mention the ADA. *Id*. DOTD argues that Ortego has failed to bring evidence that Tate was aware that Ortego's first two requests for accommodation were ADA-related requests, as opposed to normal requests for a work schedule change. Ortego testified in her deposition that she had conversations with Tate about her epilepsy and that Tate was consequently aware of her disability. Considering the facts in the light most favorable to Ortego, the Court finds that Ortego has brought sufficient evidence to show

that DOTD knew about her disability, and the second element is therefore satisfied.

### 3. Failure to Make Reasonable Accommodation

A covered employer is required to make a reasonable accommodation for an employee's known impairment unless creating the accommodation would result in undue hardship to the employer. 42 U.S.C.A. § 12112(b)(5) (West 2008). Ortego claims that DOTD unduly delayed in granting her an accommodation. She claims that she made three requests on October 14, 2008, October 29, 2008, and November 3, 2008, but that she was not granted an accommodation until November 7, 2008. DOTD argues that Ortego's first two requests for accommodation should not be considered ADA requests because they were not made pursuant to DOTD's established procedure for making ADA complaints, but were rather made as standard requests for a work schedule change.[3] Even if the Court agreed with Ortego that the date of her first official ADA-related request was October 14, 2008, only twenty-four (24) days passed between that date and November 7, 2008, the date on which the accommodation was granted. The Court finds that under

---

[3] To support its argument, DOTD cites to *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565 (2d Cir. 2003), and *Oxford House-C v. City of St. Louis*, 77 F.3d 249 (8th Cir. 1996), two Fair Housing Act cases where the Circuit courts held that a plaintiff is required to provide a government entity an opportunity to accommodate her through the entity's established procedures. *See Tsombanidis*, 352 F.3d at 578; *see also Oxford House-C*, 77 F.3d at 253. It is unclear whether these cases apply to circumstances not involving the Fair Housing Act. However, the Court need not reach this question because the Court finds that regardless of whether Ortego's first two requests were ADA-related requests, DOTD granted Ortego the reasonable accommodation she sought without undue delay.

these circumstances, a delay of twenty-four (24) days does not constitute an undue delay.[4]

Ortego also argues that Tate failed in her duty to engage in interactive discussions. The ADA regulations state that in determining the appropriate accommodation, "it *may* be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability" for the purpose of "identify[ing] the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3) (2012) (emphasis added). The interactive process requires "communication and good-faith exploration." *Chevron*, 570 F.3d at 621 (internal citations omitted).

Here, at all relevant times, all parties had clarity about the precise accommodation that Ortego was seeking. She sought to switch from five work days per week at eight (8) hours per day to four work days per week at ten (10) hours per day. Therefore, this is not a case where interactive discussions were necessary for the employer to determine what type of accommodation would be reasonable and appropriate. Ortego requested a very specific type of accommodation from the start, and that precise accommodation

---

[4] *See Jay v. Intermet Wagner, Inc.*, 233 F.3d 1014 (7th Cir. 2000) (finding that a twenty (20) *month* delay in granting an accommodation was reasonable); *see also Terrell v. USAir*, 132 F.3d 621 (11th Cir. 1998) (finding that a thirteen (13) month delay in granting an accommodation was reasonable).

14

was granted to her without undue delay. For these reasons, Ortego
has failed to establish the third element of her prima facie
case, and Ortego's ADA claim for failure to accommodate should be
dismissed.

### B. ADA Claim - Retaliation

The ADA retaliation framework is subject to the following
burden-shifting analysis:

> To establish a prima facie case of retaliation under
> the ADA or Title VII, a plaintiff must show that (1)
> she participated in an activity protected under the
> statute; (2) her employer took an adverse employment
> action against her; and (3) a causal connection exists
> between the protected activity and the adverse action.
> ... If the employee establishes a prima facie case, the
> burden shifts to the employer to state a legitimate,
> non-retaliatory reason for its decision. After the
> employer states its reason, the burden shifts back to
> the employee to demonstrate that the employer's reason
> is actually a pretext for retaliation, ... which the
> employee accomplishes by showing that the adverse
> action would not have occurred "but for" the employer's
> retaliatory motive ... . In order to avoid summary
> judgment, the plaintiff must show "a conflict in

substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity.

*Feist*, 730 F.3d at 454 (internal citations omitted).

### 1. Ortego's Prima Facie Case

### a. Protected Activity

Ortego alleges that her protected activities include her requests for accommodation, her filing of an EEOC charge, and her filing of multiple harassment complaints to DOTD Human Resources. The filing of an EEOC charge is a protected activity. *Harvill v. Westward Commc'ns*, 433 F.3d 428, 439 (5th Cir. 2005). Making a request for a reasonable accommodation is also a protected activity. *Tabatchnik v. Cont'l Airlines*, 262 Fed. App'x 674, 676 (5th Cir. 2008). Filing internal complaints alleging harassment is also a protected activity. *See Green v. Adms of Tulane Educ. Bd.*, 284 F.3d 642 (5th Cir. 2002), *overruled on other grounds*, *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).[5] Therefore, assuming, arguendo, that the claims Ortego made in her EEOC charge and internal harassment complaints were truthful, Ortego has satisfied the first element of her prima facie case.

---

[5] *Burlington* is a Title VII case; however, the Fifth Circuit applies the same analysis to both ADA and Title VII claims. *Grubic v. City of Waco*, 262 Fed. App'x 665, 666 n.6 (5th Cir. 2008).

### b. Adverse Employment Action

To satisfy this element, Ortego "must show that a reasonable employee would have found the challenged action materially adverse, which ... means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington*, 548 U.S. at 68. The "reasonable employee" standard creates an objective standard. *Id.* at 68-69. The requirement that the adversity be *material* is intended "to separate significant from trivial harms." *Id.* at 68. The purpose of the ADA  is not to "set forth a general civility code for the American workplace." *See id.* (internal citations omitted). It is clear that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* Personality conflicts, lack of good manners, and "snubbing" by supervisors and co-workers are not actionable. *Id.* Workplace criticism and job scrutiny from supervisors do not constitute adverse employment actions, but termination of employment does. *Buter v. Exxon Mobil Corp.*, 838 F. Supp. 2d 473, 496 (M.D. La. 2012); *Griffin v. Jefferson Parish Sch. Bd.*, No. 99-1344, 2001 WL 946372, at *3 (E.D. La. Aug. 20, 2001) (Fallon, J.). Internal investigations do not constitute adverse employment actions. *Breaux v. City of Garland*, 205 F.3d

150, 158-61 (5th Cir. 2000), *cert. denied*, 531 U.S. 816 (2000).[6]
Additionally, a decision by a supervisor to assign an employee to
certain job duties for a period of time does not constitute an
adverse employment action. *Davis v. Libbey Glass, Inc.*, No. 08-
1213, 2008 WL 4925025, at *2 (W.D La. Nov. 14, 2008).

Ortego claims that Tate retaliated against her by enacting
an unpopular work schedule policy change for all DOTD employees
and by encouraging the other employees to blame Ortego for the
change. Ortego also claims that Tate spoke negatively about her
to other employees, increased her workload, and gave her extra
duties with impossible deadlines. Ortego does not present the
Court with evidence of this increased workload except for
Ortego's deposition testimony that she was required to work the
switchboard in the stockroom each week, whereas other employees
worked the switchboard less frequently. (Rec. Doc. 20-1, p. 20,
38). However, Ortego also admitted that she enjoyed working the
switchboard and that she may have been assigned to work the
switchboard because her epilepsy made her incapable of performing

---

[6] In *Breaux*, several employee police officers were subjected to Internal
Affairs investigations, psychological examinations, and paid administrative
leave, and these actions by the employer were *not* considered to be adverse
employment actions. *Breaux*, 205 F.3d at 158-61. Although *Breaux* is a First
Amendment retaliation case, the *Breaux* analysis has been extended into the ADA
and Title VII contexts. *See McCoy v. City of Shreveport*, 492 F.3d 551, 559, n.23
(5th Cir. 2007) (involving race and sex discrimination); *see also Rico-Sanz v.
State*, No. 04-693, 2006 WL 3147730, at *7 (M.D. La. Oct. 23, 2006) (involving
race and national origin discrimination); *see also Davis v. Libbey Glass, Inc.*,
No. 08-1213, 2008 WL 4925025, at *2-3 (W.D La. Nov. 14, 2008) (involving race and
gender discrimination); *see also Nadeau v. Echostar*, No. 12-433, 2013 WL 5874279,
at *28 (W.D. Tex. Oct. 30, 2013) (involving ADA retaliation).

certain other tasks at work, such as driving vehicles. (Rec. Doc. 20-1, p. 21). In addition, Ortego maintains that Tate penalized her by singling her out for an investigation of alleged computer misuse at work. Ortego also argues that Tate stalked her and filed a frivolous lawsuit against her and that these actions should constitute adverse employment actions. Ortego alleges that Standige retaliated against her by allowing Tate to take these actions and by terminating Ortego's employment. DOTD argues that any criticism, job scrutiny, or rude behavior that Tate allegedly directed at Ortego does not rise to the level of a materially adverse employment action. DOTD also argues that Tate's lawsuit against Ortego is irrelevant and is not an adverse employment action because Tate is not a party to this lawsuit and did not bring the lawsuit at the direction of DOTD or in her capacity as a DOTD employee.

Standige's termination of Ortego's employment certainly constitutes an adverse employment action. However, none of Ortego's remaining allegations qualifies as an adverse employment action. Tate's speaking negatively about Ortego, allegedly encouraging other co-workers to blame her, and behaving rudely toward her are relatively trivial matters, and the case law makes it clear that an internal investigation into Ortego's computer activities while at work is not an adverse employment action. Tate's lawsuit and alleged stalking were not perpetuated in

Tate's capacity as a DOTD employee. Therefore, the only adverse employment action that the Court recognizes is the termination of Ortego's employment.

### c. Causal Connection

A plaintiff may show a causal connection by showing close timing between the protected activity and the adverse employment action. *Feist*, 730 F.3d at 454; *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271-74 (2001). The "temporal proximity must generally be very close." *Feist*, 730 F.3d at 454 (internal citations omitted). The Fifth Circuit has found that a temporal proximity of four months is sufficiently close, but a temporal proximity of five months is not close enough without other evidence of retaliation, such as a clean employment record that does not support termination. *Id.* at 454-55 (citing *Evan v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001) and *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002)). Ortego alleges that her protected activities include her requests for accommodation in October and November 2008, her filing of an EEOC charge in March 2009, and her filing of harassment complaints to DOTD Human Resources in May 2009 and May 2010. Ortego received a pre-termination letter in September 2011, and she was officially terminated in February 2012. Therefore, approximately sixteen (16) months passed between Ortego's harassment complaint of May 2010 and her pre-termination letter of September 2011. Therefore,

Ortego likely cannot establish a causal connection by showing close timing between her protected activities and her termination.

## 2. Legitimate, Non-Retaliatory Reasons

However, even assuming that Ortego could establish a causal connection and thus make out a prima facie case of ADA retaliation, DOTD has stated a legitimate, non-retaliatory reason for its decision to terminate Ortego's employment. Ortego alleges that her protected activities include her requests for accommodation, her filing of an EEOC charge, and her filing of multiple harassment complaints to DOTD Human Resources. In Standige's termination letters, she set forth the reasons for Ortego's termination: violation of DOTD's Policy and Procedure Manual, Number 29, which prohibits insubordination and conduct unbecoming of an employee, including the unauthorized release of confidential information, failure to cooperate with investigations, and treating co-workers with disrespect or lack of dignity. Specifically, Standige mentioned that Ortego misused DOTD computers, falsely accused Tate of increasing her work load, spread confidential information and rumors about Tate around the workplace, and failed to cooperate with an official DOTD investigation by refusing to provide DOTD with a copy of a police report. DOTD has therefore stated a legitimate, non-retaliatory reason for terminating Ortego.

21

### 3. Pretext

Once DOTD has stated a legitimate, non-retaliatory reason for terminating her, Ortego has the burden of showing that she would not have been terminated but for DOTD's retaliatory motive and therefore that DOTD's stated reason is a mere pretext for retaliation. Ortego has not brought forth any evidence that DOTD's stated reason is a mere pretext and therefore has not shown a conflict in substantial evidence on the question of whether DOTD would not have fired her but for her protected activities. Ortego has not denied that she misused DOTD computers, that she spread rumors about Tate around the office, or that she failed to provide DOTD with a copy of the police report. Because Ortego has failed to meet her burden of proof, her ADA retaliation claim should be dismissed.

### C. ADA Claim - Harassment

To make out a prima facie case for disability-based harassment, a plaintiff must prove:

> (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of

22

the harassment and failed to take prompt, remedial
action.

*Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 235-36
(5th Cir. 2001) (internal citations omitted).

With respect to the fourth element, the harassment much "be
sufficiently pervasive or severe to alter the conditions of
employment and create an abusive working environment." *McConathy
v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)
(internal citations omitted). To determine whether a working
environment is abusive, courts "must consider … the frequency of
the discriminatory conduct, its severity, whether it is
physically threatening or humiliating, or a mere offensive
utterance, and whether it unreasonably interferes with an
employee's work performance." *Flowers*, 247 F.3d at 236. In
assessing the fourth element, courts must keep in mind that "[i]t
is a simple fact that in a workplace, some workers will not get
along with one another," and courts "will not elevate a few harsh
words or 'cold-shouldering' to the level of an actionable
offense." *McConathy*, 131 F.3d at 564.

Assuming, arguendo, that Ortego belongs to a protected group
and was subjected to unwelcome harassment based on her
disability, the Court finds that the alleged harassment was not
sufficiently pervasive or severe to create an abuse working

23

environment. Ortego claims that all retaliatory actions by Tate and Standige, discussed in the Section B(1)(b), *supra*, also constitute actionable harassment, including the termination of her employment. Ortego claims that some DOTD employees were angry at her or refused to speak to her after Tate made an unpopular schedule change, and also that Tate spoke negatively about Ortego to other employees This type of cold-shouldering by fellow employees is not sufficiently severe to create an abusive work environment. Ortego also claims that Tate increased her workload and gave her extra duties with impossible deadlines. Again, Ortego does not present the Court with evidence of this increased workload except for her own deposition testimony, where she admitted that she enjoyed working the switchboard. Also, Ortego's claim that Tate's investigation of her computer misuse constitutes harassment. However, Ortego never denies that she misused her work, and the Court finds that using an internal investigation and allegedly assigning additional duties are reasonable ways to put an end to Ortego's inappropriate use of DOTD computers while at work. These actions are not sufficiently pervasive or severe to entirely alter the conditions of Ortego's employment or to render her working environment abusive. Ortego's claims that Tate stalked her and filed a frivolous lawsuit against her are irrelevant here because those alleged actions were not performed at the direction of DOTD.

24

Ortego also claims that the termination of her employment was an instance of disability-based harassment. For the reasons discussed in Section B(1)(c) and Section B(2), *supra*, the Court finds that Ortego has not submitted sufficient evidence to show that her termination was based on her disability. DOTD has brought evidence that Ortego was terminated for violating DOTD's Policy and Procedure Manual, Number 29, regarding employee conduct. Specifically, DOTD has brought evidence that Ortego was terminated for engaging in insubordination and conduct unbecoming of an employee, and for treating her co-workers with disrespect and lack of dignity. Ortego has not submitted evidence sufficient for a reasonable jury to conclude that she was actually terminated because she has epilepsy. Therefore, Ortego's ADA harassment claim should be dismissed.

### D. LEDL Claims

Claims under the Louisiana Employment Discrimination Law ("LEDL") are analyzed using the framework for ADA claims. *Tribble v. Ouachita Parish Police Jury*, 939 F. Supp. 2d 626, 629-30 (W.D. La. 2013) (citing *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5 Cir. 1989) and *Scott v. Turner Indus. Grp., L.L.C.*, No. 09-872, 2011 WL 5023840, at *4 (M.D. La. Oct. 19, 2011)). Therefore, for the reasons discussed in Sections A, B, and C, *supra*, Ortego's LEDL claims should be dismissed.

25

**E. § 1983 Claim - First Amendment (Free Speech) Retaliation**

To succeed on this claim, Ortego must make out a prima facie case with the following elements: (1) that she suffered an adverse employment decision, (2) that her speech involved a matter of public concern, (3) that her interest in commenting on matters of public concern outweighs DOTD's interest in promoting efficiency, and (4) that her speech motivated the adverse employment action. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001). If Ortego can make out a prima facie case, the burden shifts to DOTD to show that it would have taken the same adverse employment action regardless of the protected speech. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Ortego claims that Standige fired her in retaliation for Ortego's filing police complaints against Tate related to the alleged stalking incidents. Assuming, arguendo, that Ortego could establish a prima facie case, DOTD has shown that it would still have terminated Ortego's employment regardless of the police complaints, and Ortego has not brought forth any evidence to dispute DOTD's showing. In Standige's termination letters, she set forth the reason for Ortego's termination: violation of DOTD's Policy and Procedure Manual, Number 29, which prohibits insubordination and conduct unbecoming of an employee, including the unauthorized release of confidential information, failure to

26

cooperate with investigations, and treating co-workers with disrespect or lack of dignity. Specifically, Standige mentioned that Ortego had made internal, false harassment claims against Tate, misused DOTD computers, falsely accused Tate of increasing her work load, spread confidential information and rumors about Tate around the workplace, and failed to cooperate with an official DOTD investigation when she refused to provide DOTD with a copy of a police report. DOTD has therefore met its burden to show that it would have terminated Ortego's employment in absence of her filing the police complaints, and Ortego has not brought evidence to rebut this. Therefore, Ortego's First Amendment Retaliation claim should be dismissed.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion for Summary Judgment* **(Rec. Doc. 12)** is **GRANTED.**

**IT IS FURTHER ORDERED** that all claims asserted by Plaintiff Jo-Dee L. Ortego against all Defendants in the above-captioned matter are hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 18th day of February, 2014.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

27